IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

FEB 10 2010

COURT OF APPEALS
DIVISION TWO

JAMES L. BENNETT, individually and )
as trustee of the JAMES L. BENNETT )
MONEY PURCHASE PENSION PLAN )
                                   )        2 CA-CV 2009-0046
                                   )        DEPARTMENT A
            Plaintiff/Appellee,    )
                                   )        O P I N I O N
       v.                          )
                                   )
BAXTER GROUP, INC., an Arizona     )
corporation,                       )
                                   )
        Defendant/Third-Party      )
          Plaintiff/Appellant,     )
                                   )
       v.                          )
                                   )
ARNOLD MEYERSTEIN,                 )
                                   )
    Third-Party Defendant/Appellee. )
                                   )

APPEAL FROM THE SUPERIOR COURT OF COCHISE COUNTY

Cause No. CV-200200586

Honorable Stephen M. Desens, Judge

AFFIRMED IN PART
VACATED AND REMANDED IN PART

Borowiec, Borowiec & Russell, P.C.
  By D. Christopher Russell                              Sierra Vista
                                        Attorneys for Plaintiff/Appellee

The Baxter Law Firm
  By Judith L. Baxter                                     Encino, CA

and

Geoffrey Walker, PLC
  By Geoffrey Walker                                      Phoenix
      Attorneys for Defendant/Third-Party Plaintiff/Appellant

Gregory G. McGill, P.C.
  By Gregory G. McGill                                  Scottsdale
      Attorneys for Third-Party Defendant/Appellee

---

H O W A R D, Chief Judge.

¶1       Appellant Baxter Group, Inc. (Baxter) appeals from the trial court's rulings after a bench trial on slander of title and breach of contract claims. Baxter also appeals the court's awards of attorney fees, sanctions, and costs to appellees, James L. Bennett, individually and as trustee of the James L. Bennett Money Purchase Pension Plan (collectively "Bennett") and Arnold Meyerstein (Meyerstein). For the reasons that follow, we affirm in part and vacate and remand in part.

**Facts and Procedural History**

¶2       When reviewing issues decided following a bench trial, we view the facts in the light most favorable to upholding the court's ruling. *Sabino Town & Country Estates Ass'n v. Carr*, 186 Ariz. 146, 148, 920 P.2d 26, 28 (App. 1996). In early January 2002, Baxter contracted to sell Bennett and Meyerstein a hotel for the sum of $1,700,000. The purchase was conditioned upon Bennett's and Meyerstein's "[a]pproval of available, acceptable and suitable financing" for the property. Under the terms of the contract, Bennett and Meyerstein were also required to deposit $10,000 in an escrow account as a good faith deposit toward the purchase of the property. If Bennett and Meyerstein

2

"default[ed] or otherwise fail[ed] to complete the purchase," the contract stated that Baxter would retain any money deposited in the escrow account as liquidated damages.

¶3        Bennett made the required $10,000 deposit into an escrow account. Due to difficulties in obtaining appropriate financing, however, the closing date for the sale was extended several times. The buyers were never able to obtain the required financing. Eventually, Baxter accepted another buyer's offer to purchase the property.

¶4        Because Baxter had sold the property to someone else, Bennett requested that the $10,000 security deposit be returned. Baxter refused, claiming it was entitled to the money as liquidated damages under the terms of the sales contract. In an attempt to ensure that Baxter returned the deposit, Bennett had the "Agreement of Purchase and Sale" (Agreement) recorded, before Baxter and the new buyer had closed the hotel's sale under their agreement.

¶5        The title company subsequently discovered the recorded Agreement and asked Bennett and Meyerstein to release it, which they agreed to do in exchange for the $10,000 escrow deposit. Baxter refused to return the deposit, and Bennett and Meyerstein refused to release the recorded Agreement.

¶6        Bennett sued Baxter for breach of contract for failing to return the deposit, among other acts, and for fraud concerning an alleged extension of time for closing. Baxter filed a counterclaim against Bennett and a third-party complaint against Meyerstein, alleging against both, inter alia, fraud in the inducement and interference with its contract with the new buyer.

¶7 The trial court granted summary judgment in favor of Bennett and Meyerstein on the majority of Baxter's counterclaims and cross-claims but denied summary judgment on Baxter's claims of interference with contract and slander of title. After a bench trial on the remaining claims, the court ruled in favor of Bennett on his breach of contract claim against Baxter—awarding him the money held in escrow—but ruled in favor of Baxter on Bennett's fraud claim. The court also ruled against Baxter on its two remaining claims for interference with contract and slander of title. The court awarded Bennett and Meyerstein their attorney fees incurred during the litigation, as well as costs and sanctions. Baxter appeals from these rulings.

**Slander of Title Claim**

¶8 Baxter first argues the trial court erred in granting Bennett and Meyerstein judgment after trial on Baxter's slander of title claim, contending that "[n]o specific legal authority, statute or judgment permits the recording of a real estate sales agreement" and therefore the recorded Agreement was groundless and invalid pursuant to A.R.S. § 33-420(A) and (D). No facts relevant to our resolution of this claim are in dispute, and we review the issue de novo as a matter of law. *McMurray v. Dream Catcher USA, Inc.*, 220 Ariz. 71, ¶ 6, 202 P.3d 536, 539 (App. 2009).

¶9 Section 33-420(A) subjects a person to financial penalties for recording a document with the county recorder knowing or having reason to know "the document" is groundless or invalid. Section 33-420(D) provides that "[a] document purporting to create an interest in, or a lien or encumbrance against, real property not authorized by statute, judgment or other specific legal authority is presumed to be groundless and

4

invalid." Baxter's argument focuses solely on whether the recording of the Agreement was groundless, not on the validity of the recorded document and underlying real property interest itself. And § 33-420(D) pertains only to the validity of the document; it does not govern its recording. Therefore, Baxter has not shown that Bennett violated § 33-420.

¶10 Baxter further contends that the trial court erred in ruling in favor of Bennett and Meyerstein because they violated § 33-420(C) by "refusing to release a groundless and invalid document within twenty days of a written request." But because Baxter has not shown the document Bennett and Meyerstein recorded was groundless, it has not shown Bennett and Meyerstein violated § 33-420(C) by failing to release the interest. Additionally, because Bennett and Meyerstein did not violate any subsection of § 33-420, we also reject Baxter's additional argument that Bennett's and Meyerstein's purported violations entitled Baxter to damages. The trial court did not err in rejecting Baxter's slander of title claims.

**Breach of Contract Claims**

¶11 Baxter next contends that the trial court erred in its ruling in favor of Bennett on his breach of contract claim. Baxter initially states that the grant of summary judgment on its breach of contract claim in favor of Bennett and Meyerstein should be reversed because the court "misconstrued the terms of the contract." But this claim is "wholly without supporting argument or citation to authority," so it is waived. *Brown v. U.S. Fid. & Guar. Co.*, 194 Ariz. 85, ¶ 50, 977 P.2d 807, 815 (App. 1998); *see also* Ariz. R. Civ. App. P. 13(a)(6).

5

¶12 Baxter further argues that, in ruling on Bennett's breach of contract claim after trial, the trial court misinterpreted the relevant provisions of the Agreement in concluding that Baxter was in breach by refusing to release the $10,000 earnest money. In the absence of any relevant factual dispute, we review matters of contract interpretation de novo. *See Rand v. Porsche Fin. Servs.*, 216 Ariz. 424, ¶ 37, 167 P.3d 111, 121 (App. 2007).

¶13 "[W]e will give effect to a contract as written where the terms of the contract are clear and unambiguous." *Mining Inv. Group, LLC v. Roberts*, 217 Ariz. 635, ¶ 16, 177 P.3d 1207, 1211 (App. 2008). The liquidated damages clause of the Agreement states:

> In the event Buyers default or otherwise fail to complete the purchase in accordance with this agreement, Seller shall be released from all obligations to sell the real property to Buyers and may proceed against Buyers upon any claims or remedy which Sellers may have in law or equity; provided, however that by placing their initials below[,] Buyer and Seller agree that it would be impractical or extremely difficult to fix actual damages in the event of Buyers' default or failure to complete the purchase, and that the amounts actually deposited by Buyers in escrow shall be paid to Seller as liquidated damages and as Sellers' sole and complete remedy, except that Buyer[s] will also be responsible to pay any and all costs incurred by Buyer[s] in the course of Buyer[s'] investigation.

¶14 Baxter argues that only the second clause of that provision specifically addresses liquidated damages and that, because this clause does not include the words "in accordance with this agreement," Baxter would be entitled to collect damages for a "failure to complete the purchase" even if the conditions required of the buyers had not

6

been met. Moreover, Baxter contends that the use of the word "or" in the clause "default or failure to complete the purchase" means that, even in situations where Bennett and Meyerstein had not defaulted on the contract but had failed to complete the purchase, they still would have forfeited their earnest money. The trial court found the clause unambiguous and concluded that the language "in accordance with this Agreement" incorporates the provision of the Agreement outlining the conditions to the buyers' obligations.

¶15        We reject Baxter's attempt to parse the various clauses and instead read the provision as a whole. *See State ex rel. Goddard v. R.J. Reynolds Tobacco Co.*, 206 Ariz. 117, ¶ 12, 75 P.3d 1075, 1078 (App. 2003) (we construe contract in its entirety). The phrase "in accordance with this Agreement" is implied in the second clause. Additionally, as the trial court found, sections seven and twelve are unambiguous when read together. The liquidated damages clause of the Agreement states that the forfeiture of the earnest money would be in lieu of damages, which would be difficult to calculate. But section eight of the contract indicates that Baxter is not entitled to any damages if the conditions to Bennett's performance are not fulfilled. Therefore, in turn, the liquidated damages clause cannot apply when the conditions to Bennett's performance were not fulfilled. We agree with the interpretations of the trial court and, thus, conclude that it did not err by finding Baxter in breach of the contract for failing to return the earnest money.

¶16        Moreover, the trial court reached its conclusions after hearing all of the evidence at the bench trial. Substantial evidence supports the court's factual findings

concerning the meaning of the contract. *See Kocher v. Ariz. Dep't of Revenue*, 206 Ariz. 480, ¶ 9, 80 P.3d 287, 289 (App. 2003) (factual finding sustained unless clearly erroneous; not clearly erroneous "if substantial evidence supports it"); *see also* Ariz. R. Civ. P. 52(a) ("Findings of fact . . . shall not be set aside unless clearly erroneous."). The court resolved any conflict in the evidence, and we uphold its decision. *See Moreno v. Jones*, 213 Ariz. 94, ¶ 20, 139 P.3d 612, 616 (2006) (findings may be clearly erroneous if based on reasonable conflict of evidence). And we reject Baxter's argument that this interpretation would prevent Bennett from ever being in default. As Bennett notes, if he had prevented fulfillment of the condition, he could not rely on that condition to defeat the Agreement. *See Sec. Nat'l Life Ins. Co. v. Pre-Need Camelback Plan, Inc.*, 19 Ariz. App. 580, 582, 509 P.2d 652, 654 (1973).

¶17        Baxter further argues that we should reverse certain findings of the trial court regarding oral extensions of the contract. But Baxter concedes that these findings did not directly result in any award of damages against it. Consequently, we decline to review them. *See* Ariz. R. Civ. App. P. 1 (appeals for party "aggrieved by the judgment").

### Attorney Fees, Sanctions, and Costs

¶18        Baxter next argues that the trial court erred in its award of attorney fees, sanctions, and costs to Bennett and Meyerstein. The court awarded attorney fees, sanctions, and costs under multiple statutes and multiple theories, and we address each one in turn.

8

Attorney Fees Pursuant to A.R.S. § 12-341.01(A)

¶19        Baxter asserts that the trial court incorrectly applied § 12-341.01(A) in awarding attorney fees to Bennett and Meyerstein because it included fees related to the tort claims. "As a general rule, the parties to a civil proceeding are responsible for their own litigation expenses." *Foster ex rel. Foster v. Weir*, 212 Ariz. 193, ¶ 4, 129 P.3d 482, 484 (App. 2006). Certain statutes, however, allow parties to recover these expenses under specific circumstances. *Id.*; *see, e.g.*, § 12-341.01. Section 12-341.01(A) allows parties to recover "reasonable attorney fees" for contested claims "arising out of a contract." Its application "is a question of statutory interpretation, which we review *de novo*." *Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.*, 198 Ariz. 10, ¶ 12, 6 P.3d 315, 318 (App. 2000).

¶20        The meaning of "arising out of a contract" as used in § 12-341.01(A) has been the subject of many appeals in which courts have had to evaluate its applicability to non-contract claims. *See, e.g.*, *Marcus v. Fox*, 150 Ariz. 333, 335, 723 P.2d 682, 684 (1986); *Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 542-43, 647 P.2d 1127, 1140-41 (1982); *Ramsey Air Meds*, 198 Ariz. 10, ¶ 18, 6 P.3d at 318; *Amphitheater Pub. Schs. v. Eastman*, 117 Ariz. 559, 560, 547 P.2d 47, 48 (App. 1977). Many of the decisions interpreting "arising out of a contract" seem contradictory, but Arizona courts have held attorney fee awards appropriate under § 12-341.01(A) even for certain non-contract claims, including torts.

¶21        In *Ramsey Air Meds*, one of the more recent cases, this court directly addressed the recoverability of attorney fees expended for litigating a tort claim "arising

9

out of a contract." *See* 198 Ariz. 10, ¶ 18, 6 P.3d at 318. There, the court first analyzed *Ramsey Air Meds*'s tort claim to determine if it was "interwoven" with the breach of contract claim. *Id.* ¶ 17. The court did not define "interwoven" but cited *Pettay v. Insurance Marketing Services, Inc. (West)*, 156 Ariz. 365, 368, 752 P.2d 18, 21 (1987), which stated that attorney fees could be awarded for litigating the tort claim because it could not have been brought but for the breach of contract, and *Campbell v. Westdahl*, 148 Ariz. 432, 440-41, 715 P.2d 288, 296-97 (1985), which allows an award of attorney fees if the tort and contract actions are "intertwined." *Ramsey Air Meds*, 198 Ariz. 10, ¶ 17, 6 P.3d at 318. But, because the party requesting attorney fees in *Ramsey Air Meds* failed on the contractual claim, the court found that § 12-341.01(A) could not support an award of fees for the tort claims under this theory. *Id.*

¶22     Absent an express, successful contract claim, the *Ramsey Air Meds* court then looked at whether the tort claims there independently arose "out of a contract" for purposes of the statute. *Id.* ¶¶ 18-29. Following a comprehensive review of the case law, *Ramsey Air Meds* concluded that

> the court should look to the fundamental nature of the action rather than the mere form of the pleadings. The existence of a contract that merely puts the parties within tortious striking range of each other does not convert ensuing torts into contract claims. Rather, a tort claim will "arise out of a contract" only when the tort could not exist "but for" the breach or avoidance of contract. When the duty breached is one implied by law based on the relationship of the parties, that claim sounds fundamentally in tort, not contract. In such cases, it cannot be said that the plaintiff's claim would not exist "but for" the contract. The test is whether the defendant would have a duty of care under the circumstances even in the absence of a contract.

*Id.* ¶ 27.

**¶23** In *Modular Mining Systems, Inc. v. Jigsaw Technologies, Inc.*, 221 Ariz. 515, ¶¶ 22-23, 212 P.3d 853, 859-60 (App. 2009), we specifically noted that the "arising out of" analysis is complex, and we relied on the fact that the claims were interwoven in upholding the fee award. We cited several cases from foreign jurisdictions that primarily found attorney fees incurred in defending or prosecuting non-contract claims can be awarded when these claims are so factually connected to a contract claim that they require the same work that is already necessary for the defense or prosecution of the contract claim alone. *Id.* n.10. Allowing an award of fees in this situation better serves the legislative intent in § 12-341.01 than denying contract-related fees because they are interwoven with non-contract fees. *See New Pueblo Constructors, Inc. v. State*, 144 Ariz. 95, 111, 696 P.2d 185, 201 (1985) (legislative intent of § 12-341.01 to "mitigat[e] the burden of the expense of litigation to establish a just claim or just defense, and discourag[e] frivolous lawsuits"); *see also Zeagler v. Buckley*, 223 Ariz. 37, ¶ 9, 219 P.3d 247, 249 (App. 2009) ("[W]hen . . . claims are so interrelated that identical or substantially overlapping discovery would occur, there is no sound reason to deny recovery of such legal fees.").

**¶24** Baxter brought claims on several tort theories in addition to its claim for breach of contract. The tort claims include: interference with a contractual relationship and prospective business advantage with the new buyer, fraud in the inducement, unfair competition, and slander of title and filing false documents. These types of claims have

11

been found not to arise "out of a contract." *Morris v. Achen Constr. Co.*, 155 Ariz. 512, 514, 747 P.2d 1211, 1213 (1987) ("The duty not to commit fraud is obviously not created by a contractual relationship and exists . . . even when there is no contractual relationship between the parties at all."); *Fairway Constructors, Inc. v. Ahern*, 193 Ariz. 122, ¶ 17, 970 P.2d 954, 957-58 (App. 1998) (unfair competition arises out of tort); *Bar J Bar Cattle Co. v. Pace*, 158 Ariz. 481, 486, 763 P.2d 545, 550 (App. 1988) ("The duty not to interfere with the contract of another arises out of law, not contract."); *W. Techs., Inc. v. Sverdrup & Parcel, Inc.*, 154 Ariz. 1, 3, 7-8, 739 P.2d 1318, 1320, 1324-25 (App. 1986) (interference with prospective business advantage not found to arise out of contract); *cf. W. Techs.*, 154 Ariz. at 3, 6-8, 739 P.2d at 1320, 1323-25 (slander of title shares a "common root" with tortious interference, which does not arise out of contract).

**¶25** And the trial court's finding that these claims "would" not have been brought "but for" the contract claim does not satisfy the *Ramsey Air Meds* standard which allowed attorney fees for tort claims that *could* not have been brought but for the breach of contract. *See Ramsey Air Meds*, 198 Ariz. 10, ¶ 27, 6 P.3d at 320. Additionally, because *Modular Mining Systems* was decided after the judgment in this case, the trial court did not have the benefit of considering the administrative-necessity avenue for awarding fees. *See Modular Mining Sys.*, 221 Ariz. 515, ¶¶ 22-25, 212 P.3d at 859-61. Accordingly, we vacate the award of fees and remand for reconsideration under the proper standards.

Attorney Fees Pursuant to A.R.S. §§ 12-341.01(C) and 12-349(A)

**¶26**    Baxter argues the trial court erred in awarding attorney fees pursuant to §§ 12-341.01(C) and 12-349(A) because the court did not make appropriate findings and because its claims were not groundless, did not constitute harassment, and were made in good faith.[1]    The applicability of §§ 12-341.01(C) and 12-349(A) is a question of statutory interpretation that this court reviews de novo.  *See Ramsey Air Meds*, 198 Ariz. 10, ¶ 12, 6 P.3d at 318; *see also Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996) (issues of statutory construction reviewed de novo).

**¶27**    Section 12-341.01(C) provides:  "The court shall award reasonable attorney fees in any contested action upon clear and convincing evidence that the claim or defense constitutes harassment, is groundless and is not made in good faith."  And § 12-349(A) provides:

> the court shall assess reasonable attorney fees, expenses and, at the court's discretion, double damages of not to exceed five thousand dollars against an attorney or party, including this state and political subdivisions of this state, if the attorney or party does any of the following:
>
> 1.  Brings or defends a claim without substantial justification.
> 2.  Brings or defends a claim solely or primarily for delay or harassment.
> 3.  Unreasonably expands or delays the proceeding.

Section 12-349(F) defines "without substantial justification" as "mean[ing] that the claim or defense constitutes harassment, is groundless and is not made in good faith."

---

[1]Baxter addresses §§ 12-341.01(C) and 12-349(A) in separate sections of its opening brief, but its argument sometimes conflates the two.  And because of the similarity of the requirements under each statute, we address the arguments together.

¶28         "[T]he trial court must make appropriate findings of fact and conclusions of law" for all three elements. *Fisher ex rel. Fisher v. Nat'l Gen. Ins. Co.*, 192 Ariz. 366, ¶ 13, 965 P.2d 100, 104 (App. 1998); *see also Trantor v. Fredrikson*, 179 Ariz. 299, 300, 878 P.2d 657, 658 (1994) (requirement of findings same for §§ 12-341.01(C), 12-349). Further, A.R.S. § 12-350 requires the trial court, when making an award under § 12-349, to set forth the specific reasons for an award. *State v. Richey*, 160 Ariz. 564, 565, 774 P.2d 1354, 1355 (1989). The purpose of this requirement is to assist the appellate court on review. *See id.* Thus, the findings "need only be specific enough to allow an appellate court 'to test the validity of the judgment.'" *Phoenix Newspapers, Inc. v. Ariz. Dep't of Corrs.*, 188 Ariz. 237, 243, 934 P.2d 801, 807 (App. 1997), *quoting Miller v. Bd. of Supervisors*, 175 Ariz. 296, 299, 855 P.2d 1357, 1360 (1993).

¶29         Here, the trial court referred to its earlier findings of fact regarding Baxter's having made false statements in a letter sent to the title company, the closing of the sale to the third party, and Baxter's claim for damages for slander of title and intentional interference. It found that Baxter had "asserted certain claims without substantial justification causing unreasonable delay in this litigation and which claims were in the nature of harassment up to the day of trial." It also concluded that Baxter had "brought or defended claims without substantial justification and unreasonably expanded the proceedings by failing until the time of trial to notify the parties and this Court of which claims or defenses it was no longer pursuing."

¶30         Baxter complains the trial court did not make a finding that its claims were groundless or were made in bad faith. But, as it notes, "without substantial justification"

14

includes a finding that the claim is groundless and made in bad faith. *See* § 12-349(F). And the court's findings are specific enough for us to evaluate them on review. *See Richey*, 160 Ariz. at 565, 774 P.2d at 1355. The court specifically found that Baxter had unreasonably expanded the proceedings and that its claims were in the nature of harassment. Therefore, we will not reverse the award for lack of findings.

¶31 Baxter further argues its claims were not groundless, intended to harass, made in bad faith, or meant to cause unreasonable delay. "We view the evidence in a manner most favorable to sustaining the award and affirm unless the trial court's finding that the action [was groundless, harassing and in bad faith] is clearly erroneous." *Phoenix Newspapers*, 188 Ariz. at 243, 934 P.2d at 807.

¶32 Baxter has not made any substantial argument on appeal that its claims against Bennett for slander of title and interference with a business relationship were valid. The trial court could have found they were groundless, intended to harass, made in bad faith, or meant to cause an unreasonable delay, and we cannot say that such a finding would be "clearly erroneous." Therefore, we reject Baxter's claim.

¶33 Baxter further contends that the trial court misapplied § 12-349(A) by basing its decision on "a few minor elements of damages." The court found that Baxter had "asserted . . . claims without substantial justification causing unreasonable delay" and that the claims "were in the nature of harassment." Thus, it concluded that Bennett and Meyerstein were entitled to attorney fees pursuant to § 12-349. Although the court's finding that Bennett was entitled to fees followed a paragraph finding that Baxter had presented no evidence on certain elements of damage, the court did not limit the basis for

15

its award to the "few minor elements of damages" to which Baxter refers. Rather, the court referred to its findings of fact and conclusions of law from an earlier ruling in finding that Baxter's claims were "without substantial justification."

¶34 Finally, Baxter challenges the amount of attorney fees awarded based on the expansion of the issues. Although the findings of fact and conclusions of law upon which the trial court relied in awarding the fees are sufficient to meet the requirements of the statutes, they pertain to discrete issues which were not central to the basic breach of contract and tort contests. But the amount the court awarded does not appear to be confined to these specific issues. We cannot uphold the court's awards of the entire amount of Bennett's and Meyerstein's attorney fees based on these limited findings. Therefore, we vacate the attorney fees awards based on §§ 12-341.01(C) and 12-349(A) and return the issue for reconsideration.

Sanctions

¶35 Baxter further argues the trial court erred by awarding Bennett and Meyerstein each $4,000 as a sanction, claiming that the court gave no factual basis for those awards. But, as we have concluded above, the court made sufficient findings and conclusions to support an award under § 12-349(A), which authorizes the court to grant "double damages of not to exceed" $5,000. And Baxter does not identify with particularity and proper argument any other defect, so any further argument is waived. *See Brown*, 194 Ariz. 85, ¶ 50, 977 P.2d at 815; *see also* Ariz. R. Civ. App. P. 13(a)(6). Therefore, we affirm the award of sanctions.

16

Costs

¶36    Baxter argues the trial court erred in awarding taxable costs to Bennett and Meyerstein because it included certain expenses that do not meet the requirements of the applicable statute. "[W]hether certain expenditures are taxable costs is a matter of law that we review de novo." *Foster ex rel. Foster v. Weir*, 212 Ariz. 193, ¶ 5, 129 P.3d 482, 484 (App. 2006). Taxable costs are defined in A.R.S. § 12-332(A) and include, in relevant part: "[f]ees of officers and witnesses," "[c]ost of taking depositions," "[c]ompensation of referees," "[c]ost of certified copies of papers or records," and "[o]ther disbursements that are made or incurred pursuant to an order or agreement of the parties." There have been no orders requiring specific expenditures, and there is no evidence in the record of a relevant agreement of the parties.

¶37    The trial court awarded taxable costs to Bennett and Meyerstein in the amounts of $1,571.61 and $5,023.92 respectively. But few of the taxable costs charged by both Bennett and Meyerstein meet the definition in § 12-332(A). There are some costs for the taking of depositions, but their totals fall far short of the awards. Travel costs related to the taking of depositions outside Arizona and photocopies of deposition records have been determined to be taxable costs. *Young's Market Co. v. Laue*, 60 Ariz. 512, 517, 141 P.2d 522, 524 (1943) (interpreting earlier statute for taxable costs including "costs of taking deposition," court allowed travel expenses for attorney to attend deposition outside Arizona); *State ex rel. Corbin v. Ariz. Corp. Comm'n*, 143 Ariz. 219, 229-30, 693 P.2d 362, 372-73 (App. 1984) (photocopies of deposition transcript allowable taxable cost). However, the record does not adequately reflect whether any of

17

the photocopying charges were for this purpose, nor does it appear that any of the depositions were taken outside of Arizona. Most of the costs awarded are for ineligible expenses such as photocopies, facsimiles, shipping, and travel expenses.

¶38    The trial court also awarded Bennett double taxable costs ($1,932) as a sanction pursuant to Rule 68(g), Ariz. R. Civ. P., because Baxter had declined Bennett's offer of judgment. However, the rule only allows consideration of taxable costs as defined by § 12-332, and we are unable to find properly taxable costs that amount to $966—half of the awarded amount. Thus, we remand this issue for a recalculation of taxable costs, including the double taxable costs awarded as a sanction, consistent with this decision and the definition set forth in the statute.

### Judgment against Margaret and Loran Baxter

¶39    Baxter finally argues that Margaret and Loran Baxter were improperly included in the judgment in violation of their right to due process because they were not parties below. We first note that the Baxters, as individuals, were not parties to the lawsuit.[2] Under certain circumstances, nonparties are allowed to appeal a judgment. *See*, *e.g.*, *Wieman v. Roysden*, 166 Ariz. 281, 281, 284, 802 P.2d 432, 432, 435 (App. 1990) (nonparty attorney allowed to appeal sanctions imposed against him by trial court). But Rule 8(c), Ariz. R. Civ. App. P., requires that the notice of appeal "specify the party or parties taking the appeal," and the notice of appeal in this case does not include Margaret

---

[2]Baxter does not assert that it, as an entity, has standing to bring an appeal on behalf of Margaret and Loran Baxter, as individual shareholders, so we need not address this question.

18

and Loran Baxter.[3] Citing *Wieman*, Baxter argues that the absence of Margaret and Loran Baxter on the notice of appeal does not preclude their appeal. Yet the nonparty in *Wieman* had indeed filed a notice of appeal "from 'the Judgment entered against [him].'" 166 Ariz. at 284, 802 P.2d at 435 (alteration in *Wieman*); *see also Abril v. Harris*, 157 Ariz. 78, 81, 754 P.2d 1353, 1356 (App. 1987) (attorney included in notice of appeal). Thus, because the Baxters did not file a proper notice of appeal, we lack jurisdiction to determine whether the exceptions for nonparties would apply to them under the circumstances of this case.

**Attorney Fees on Appeal**

¶40        All parties request attorney fees on appeal. Section 12-341.01(A) authorizes the court to grant attorney fees to the "successful party" in a contract action. Bennett has been successful on most of the issues but Baxter has obtained a remand on some of the attorney fees, sanctions, and costs. If the trial court ultimately awards Bennett all or substantially all of his attorney fees on any basis on remand, it is directed to also award Bennett his reasonable attorney fees incurred on appeal. Baxter's request for attorney fees is denied.

---

[3]The notice of appeal states only that "Defendant Baxter Group, Inc. appeals" from the trial court's judgment.

19

## Conclusion

**¶41**     In light of the foregoing, we affirm in part and vacate and remand in part.

_____
JOSEPH W. HOWARD, Chief Judge

CONCURRING:


_____
PHILIP G. ESPINOSA, Presiding Judge


_____
GARYE L. VÁSQUEZ, Judge